IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>JOHN TUAKALAU,<br><br>  Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:08-cr-00431-TC-4<br><br>District Judge Tena Campbell |

Defendant John Tuakalau has moved the court for compassionate release. (ECF No. 340.) The United States opposes the motion. (ECF No. 351.) After obtaining counsel, Mr. Tuakalau filed a reply in support of his motion. (ECF No. 358.) The court heard argument by Zoom on March 29, 2022. For the reasons below, the court GRANTS Mr. Tuakalau's motion and orders his release from custody.

## BACKGROUND

Mr. Tuakalau was charged in a string of gang-related armed robberies in 2007 and 2008. He pled guilty (under a Rule 11(c)(1)(C) plea agreement) to four counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951, and one count of discharging a firearm during the robbery in violation of 18 U.S.C. § 924(c). (ECF No. 65.) On January 26, 2009, the court sentenced Mr. Tuakalau to 360 months (30 years), the above-Guideline-range stipulated sentence. (ECF Nos. 87 & 89.) Mr. Tuakalau has served fourteen years in prison, and his projected release date is twelve years away—March 31, 2034. (First Step Act Relief Eligibility Report at 3, ECF No. 349.)

/ / /

## ANALYSIS

Mr. Tuakalau brings his motion under 18 U.S.C. § 3582(c)(1)(A), modified by the First Step Act of 2018 (FSA). See Pub. L. No. 115-391, 132 Stat. 5194, 5238, § 603(b). The FSA provides that a district court "may not modify a term of imprisonment once it has been imposed" unless an exception is present. 18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 824–25 (2010). That exception is present when the motion to modify sentence is brought by the defendant, "after the defendant has fully exhausted all administrative rights to appeal," or after thirty days have elapsed since the prison warden receives the defendant's request to file a motion, whichever is earlier. § 3582(c)(1)(A).

If the court finds administrative exhaustion, it must then embark on the Tenth Circuit's three-step test for compassionate release motions. See United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021) (citing United States v. Jones, 980 F.3d 1098 (6th Cir. 2020)). First, the court must find that "extraordinary and compelling reasons warrant a sentence reduction." Id. at 1042. Second, the court must find that the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. Third, the court must consider "any applicable § 3553(a) factors" and determine "whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." Id.

I. **Exhaustion of Administrative Remedies**

The court may not consider Mr. Tuakalau's motion without proof that he meets the exhaustion requirement in § 3582(c)(1)(A). The parties agree that Mr. Tuakalau has exhausted his administrative remedies for his claim based on the FSA's amendment to § 924(c) sentence stacking, so the court may examine Mr. Tuakalau's motion.

## II.     <u>**Extraordinary and Compelling Reasons**</u>

If a defendant has exhausted his administrative remedies, he may bring a motion to the district court that extraordinary and compelling reasons nonetheless warrant his release. The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'" <u>McGee</u>, 992 F.3d at 1045. In <u>McGee</u>, the Tenth Circuit held that a district court may consider a defendant's pre-First-Step-Act life sentence under 21 U.S.C. § 841(b)(1)(A) as part of its extraordinary and compelling analysis. But "it can only be the combination of such a sentence <u>and</u> a defendant's unique circumstances that constitute 'extraordinary and compelling reasons.'" <u>Id.</u> at 1048 (emphasis added). Rehabilitation alone cannot be an extraordinary and compelling reason. <u>Id.</u> at 1043. So the court must look to unique and individualized reasons beyond an extraordinarily long sentence or the defendant's rehabilitation.

The holding in <u>McGee</u> was based on the Fourth Circuit's reasoning in <u>United States v. McCoy</u>, 981 F.3d 271 (4th Cir. 2020). There, the Fourth Circuit laid out some examples of what "individual circumstances" could be, including "'the defendants' relative youth . . . at the time of their offenses,' the amount of time each defendant had already served on their original sentences, the defendants' 'excellent institutional records,' and the 'substantial steps toward rehabilitation' taken by the defendants." <u>McGee</u>, 992 F.3d at 1047 (quoting <u>McCoy</u>, 981 F.3d at 286).

Here, Mr. Tuakalau received an extraordinarily long 30-year sentence, and all the circumstances present in <u>McCoy</u> are also present here. Mr. Tuakalau was between nineteen and twenty years old when he committed the crimes in question.[1] He has served fourteen years in

---

[1] The United States contends that a defendant's youth "ceases to be extraordinary or compelling when cited in every case." (Opp'n at 17, ECF No. 351.) Linguistically, this may be true. "Extraordinary" means "[o]ut of the usual or regular course or order." <u>Oxford English Dictionary</u>, https://www.oed.com/view/Entry/67124. The United States says that young defendants often commit gang-related armed robberies. (Opp'n at 17, ECF No. 351.) True as this may be, the Tenth Circuit has still noted that at a defendant's "relative youth" can be an individual factor supporting a finding of extraordinary and compelling reasons. <u>McGee</u>, 992 F.3d at 1047 (quoting <u>McCoy</u>, 981 F.3d at 286).

3

prison, having spent nearly half his life behind bars. And during that time, Mr. Tuakalau has shown strong rehabilitation. He has earned his high-school diploma, has participated in practical training programs, has worked in—and continues to work in—high-trust jobs, and even joins a men's peer-support group over the phone. Mr. Tuakalau has not had a perfect institutional record, but his attorney credibly justifies Mr. Tuakalau's limited disciplinary infractions. He has not had a single disciplinary action (and no positive drug tests) in the past three years, and after his most recent write-up, he completed a twelve-month Special Management Unit program in only nine months.

The United States identifies what it sees as a key distinction between Mr. Tuakalau's case and other similar compassionate-release cases: Mr. Tuakalau did not receive a stacked sentence. (Opp'n at 19, ECF No. 351 ("Quite simply, his sentence was a product of neither the § 924(c) stacking rules that FSA § 403 amended, nor of the Guidelines, and candidly bore little practical relation to either.").) In the government's view, if Mr. Tuakalau pled to the same crimes today, he would receive the exact same sentence that was imposed in 2009. This is true, but only theoretically. Mr. Tuakalau took a plea with a stipulated 30-year sentence to avoid a possible 185-year stacked sentence if convicted on all counts. He made his Hobson's choice—to take the deal—against the backdrop of § 924(c) sentence stacking.

Mr. Tuakalau took the plea deal against the backdrop of § 924(c) sentence stacking. True, he could have received an identical sentence today had he pled to the same five charges. But if the government were only seeking a 68-year sentence under post-FSA law, it would have undoubtedly offered Mr. Tuakalau a better deal to avoid a trial—certainly better than 30 years. Had his crimes occurred today, Mr. Tuakalau would have possessed more plea-bargaining leverage. This counterfactual exercise is speculative at best. Despite Mr. Tuakalau having not

received a stacked sentence, when the court considers the big picture, he would have likely received much less time if sentenced today.

Mr. Tuakalau and his codefendant Viliami Loumoli committed similar crimes and received similarly long sentences. Mr. Tuakalau was charged with eight counts of Hobbs Act Robbery and eight associated § 924(c) counts. (Indictment, ECF No. 1 in 2:08-cr-00431.) He pled guilty to four counts of Hobbs Act Robbery and one § 924(c) count and received a 30-year sentence. Mr. Loumoli was charged with seven counts of Hobbs Act Robbery and seven associated § 924(c) counts, (id.), and he was charged in a separate case with one count of assaulting a federal officer and an associated § 924(c) count. (Superseding Indictment, ECF No. 12 in 2:08-cr-00499.) He pled guilty to one count of Hobbs Act Robbery, one count of assaulting a federal officer, and two § 924(c) counts, and he received a 35-year sentence. Having received zero years for the non-924(c) counts, Mr. Loumoli's entire sentence was the product of § 924(c) stacking. Both men were facing upwards of 150 years if convicted on all counts, and both men took plea deals to ensure a future out of custody.

The key difference between Mr. Tuakalau and Mr. Loumoli is the crimes to which they pled. Because Mr. Loumoli's plea deal included two § 924(c) counts, he received a pre-FSA stacked sentence. Had Mr. Loumoli instead pled to more Hobbs Act Robberies and one less § 924(c) count—like Mr. Tuakalau did—the two men would be in the same boat today. Absurdly, it would have been better for Mr. Tuakalau to have received a 185-year sentence because he would be able to advance a more direct stacking argument on compassionate release. His case would look more like Kepa Maumau's, Eric Kamahele's, and yes, Mr. Loumoli's. The government was able to secure Mr. Tuakalau's conviction by threatening an effective life sentence, and it then exercised prosecutorial discretion by choosing the charges to which Mr.

Tuakalau would plead. These Tongan Crip defendants were all facing effective life sentences because of stacking. Some were given stacked sentences, and some were not. And now the three "lucky" defendants to receive stacked sentences can be released on compassionate release, and Mr. Tuakalau cannot? The court cannot condone such arbitrariness.

In conclusion, the court takes Mr. Tuakalau's age, his long sentence, his rehabilitation, and the FSA amendments as collectively forming an extraordinary and compelling reason to reduce his sentence.

### III. Sentencing Commission Policy Statement

Because the Sentencing Commission has not altered its policy statement since Congress passed the FSA, the court may independently determine whether extraordinary and compelling reasons are present. See McGee, 992 F.3d at 1050; United States v. Maumau, 993 F.3d 821, 836–37 (10th Cir. 2021). Therefore, the court skips this step and proceeds to step three of the test.

### IV. Section 3553(a) Factors

In considering a motion for compassionate release, the court must finally "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," the purposes of sentencing, "the kinds of sentences available," the sentences and ranges established by the Sentencing Guidelines, "pertinent policy statement[s]" issued by the Sentencing Commission, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and "the need to provide restitution to any victims." 18 U.S.C. § 3553(a).

To be sure, Mr. Tuakalau's decisions to join a gang, commit multiple robberies, and fire his gun were highly dangerous and extremely serious. But those decisions were also the product of an immature, adolescent brain, molded by peers who encouraged Mr. Tuakalau in negative ways.[2] Drugs and alcohol, too, surely contributed to this reckless behavior. Mr. Tuakalau has spent fourteen years in prison. He is now thirty-four years old, and the court believes he has learned from his mistakes and will seek to live as a productive member of the community. He also identifies a viable release plan, including a supportive family ready to house him and a job with his stepfather's company. More prison time would not contribute to Mr. Tuakalau's further rehabilitation; rather, it would unnecessarily continue his punishment.

> The purposes of sentencing are
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2). As stated above, the court does not believe that Mr. Tuakalau will reoffend, given his age, family ties, and prearranged employment. And despite the seriousness of his offenses, the FSA's elimination of stacked § 924(c) sentences weighs against his current sentence being a "just punishment." As discussed earlier, Mr. Tuakalau would have received under a more favorable plea deal were the threat of stacking not looming in the background, so a lesser sentence could also serve to "provide just punishment" for Mr. Tuakalau's crimes. His sentence, as his attorney puts it, "over-punishes." Defendants in Mr. Tuakalau's original position would also likely receive a better plea deal (and less time) today, so the sentencing disparities are wide

---

[2] Mr. Tuakalau's attorney points out that he joined the Tongan Crip Gang when he was twelve years old. This sort of upbringing is not conducive to a law-abiding life.

between Mr. Tuakalau and similarly situated defendants.³  And Mr. Tuakalau will best be able to provide restitution to his victims when he is released from prison, earning money at a job, and contributing to society.⁴

Because on balance the § 3553(a) factors weigh in Mr. Tuakalau's favor, the reduction authorized by his extraordinary and compelling situation is warranted here.  In crafting a new sentence for Mr. Tuakalau, the fourth factor requires that the court consider the mandatory minimum sentence of ten years for the § 924(c) count and the sentencing guideline range of 78 to 97 months for the other counts.  As in United States v. Maumau, No. 2:08-cr-00758-TC, ECF No. 1760 (May 11, 2020) (slip copy), the court here is not obligated to impose those sentences.  It can craft a new sentence consistent with the § 3553(a) factors.⁵

And as in Mr. Maumau's case, the interests of justice would not be served by prolonging Mr. Tuakalau's prison term.  The court concludes that resentencing Mr. Tuakalau to time served would be most consistent with the § 3553(a) factors.

## CONCLUSION

Mr. Tuakalau has satisfied the requirements for compassionate release.  Accordingly, IT IS ORDERED that Mr. Tuakalau's motion for compassionate release (ECF No. 340) is GRANTED.  Mr. Tuakalau's sentence is reduced to time served, to become effective pending a fourteen-day United States Probation Office prerelease investigation.

---

³ To deny Mr. Tuakalau relief under § 3553(a) would result in a wide disparity between Mr. Tuakalau and defendants like Mr. Maumau, Mr. Kamahele, and Mr. Loumoli.  Under § 3553(a)(6), the court may consider disparities between Mr. Tuakalau and his codefendants.  See United States v. Smart, 518 F.3d 800, 804 (10th Cir. 2008) (citing Gall v. United States, 552 U.S. 38, 55–56 (2007)); id. at 817 n.2 (Hartz, J., dissenting) ("Of course, when codefendants *are* similarly situated, they should receive similar sentences.")).

⁴ The restitution issue is especially salient because two of Mr. Tuakalau's three codefendants are dead.  Mr. Tuakalau and Mr. Loumoli (who was released in November 2021) are now responsible for the roughly $22,000 restitution, which was imposed jointly and severally.

⁵ Mr. Tuakalau has already served 168 months—85% of the low end of the total Guideline range, and 77% of the high end of that range.

The court maintains Mr. Tuakalau's original 60-month term of supervised release. All previously imposed standard and special conditions of supervision are reimposed. The court also imposes two additional conditions. First, Mr. Tuakalau shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing, which is required as a condition of supervision. Second, Mr. Tuakalau shall not use, possess, ingest, or market products containing THC in any form or CBD products that are not obtained from a pharmacy by prescription.

DATED this 12th day of April, 2022.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge